UNITED STATES DISTRICT COURT
IN THE MIDDLE DISTRICT OF PENNSYLVANIA

JOSEPH MILLER,

                  Plaintiff,

     v.

UNITED STATES OF AMERICA,
DOUGLAS K. WHITE, in his official
 capacity as Warden of LSCI Allenwood;
DAVID M. BARBEN, in his official
 capacity as Lieutenant at LSCI Allenwood;
DAVID J. EBBERT, in his official capacity
as WARDEN of USP Lewisburg - Camp,
J. RAY ORMOND, in his official
 capacity as Regional Director,

               Defendant(s).

CIVIL ACTION

Case No.: 3:18cv2456

JURY DEMAND

FILED
SCRANTON

DEC 3 1 2018

PER_____ _____CLERK

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT

     Plaintiff, Joseph Miller, seeks damages, and declaratory judgment against
Defendants United States of America, Douglas K. White, in his official capacity
as Warden of LSCI Allenwood, David M. Barben, in his official capacity as
Lieutenant at LSCI Allenwood; David J. Ebbert, in his official capacity as
Warden of USP Lewisburg - Camp, and J. Ray Ormond, in his official capacity
as Regional Director for the tortious acts complained of herein.  Plaintiff
avers based on personal knowledge, review of documents, or otherwise upon
information and belief:

NATURE OF ACTION

    1.  This action is brought under the Federal Tort Claims Act ("FTCA"),
28 U.S.C. 2671, et seq. for relief from the commission of tortious acts, the
Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq., the First,
Fifth and Fourth and Fourteenth Amendments to the U.S. Constitution, and the
Declaratory Judgment Act, 28 U.S.C. 2201, for declaratory judgment to remedy
the BOP pattern and practice of ultra vires conduct in excess of statutory
regulatory authority and deprivation of Plaintiffs procedural and substantive

due process rights.

2.  Plaintiff has complied with all presuit requirements of 28 U.S.C. §
2671, et seq., the First, Fourth, Fifth and Fourteenth Amendment.  Specifically,
on June 6, 2018, Plaintiff completed the required SF-95 Claim for Damages,
Injury or Death Form which was assigned Claim No. TRT-NER-2018-05265.  The
claim sought $5,000,000 in damages for the tortious acts and constitutional
violations.  The Defendants denied the claim on June 18, 2018.  See Exh. 'A'.

3.  Plaintiff attempted to file a number of Administrative remedies through
the BOP Administrative Remedy Process 28 C.F.R. § 540, however misconduct
by the defendant thwarted those efforts by arbitrarily and capriciously rejecting
them based on improper reasons.  The Defendant David M. Barben threatened
the Plaintiff as well as intimidated him in one instance to signing a withdrawal
of Administrative Remedy Form.

4.  In an effort to regulate discipline with the Federal Bureau of Prisons,
the Defendants are authorized to place prisoners in the Special Housing Unit
on Disciplinary/ Administrative Segregation under limited circumstances in
accordance with federal regulations, policy and due process.  The Defendants
has and continues to engage in a pattern and practice of threatening, intimidating,
harrassing prisoners and abusing their authoirty by throwing prisoners in
the SHU for arbitrary and capricious reasons without justification or demonstration
of the required limited circumstances to warrant placement in the SHU, then
denying the prisoners due process by refusing and or failing to follow the
required due process requirements by holding hearings and conducting reviews
of the placement decision.  This pattern and practice by the Defendants is
in excess of BOP authority, is otherwise contrary to law, federal regulations
and violates Plaintiff's First, Fifth, Fourth and Fourteenth Amendment.

5.  To redress the irreparable harm to his rights, plaintiff seeks immediate
declaratory relief as well as damages to ensure future compliance with the
law and federal regulations by the Defendant.

PARTIES

6.   Plaintiff, Joseph Miller ("Miller") is a veteran currently confined in the Federal Bureau of Prisons at LSCI Allenwood.  His register number is 22203-014.  His mailing address is P. O. Box 1000, White Deer, PA 17887.

7.   Defendant United States of America ("United States") is an appropriate party with certain exceptions for injuries caused by negligent or wrongful acts or omissions of any federal employee acting within the scope of his or her employment, in accordance with the law of the State where the act or omissions occurred.

8.   The United States is an appropriate party for injuries caused by prison officers arising out of negligence, misrepresentation, malicious prosecution, negligent supervision, and illegal seizure, intentional emotional distress.

9.   The Federal Bureau of Prisons ("BOP") is a component of the United States Department of Justice, an agency of the United States.  FBOP, including but not limited to officers, directors, assistant directors, guards, special agents, are empowered by law to execute searches, to seize evidence or to make arrest and are therefore considered law enforcement officers as defined by 28 U.S.C. § 2680(h).

10.   Defendant J. Ray Ormond ("Ormond") is the Northeast Regional Director of the FBOP.  As the Regional Director Ormond is responsible for the oversight conduct, and day to day operations, compliance with policy and federal, local and state law compliance.  Ormond acts as Warden in the absence of the Warden. Ormond is responsible for the supervision of White, Ebbert, as well as investigating complaints of misconduct, abuse of authority and disciplinary action against staff.  At all relevant times Ormond was a federal employee acting within the scope of his/her employment.  Ormond owes a day of care to the prisoners confined to the institution under his charge pursuant to 18 U.S.C. § 4042.

11.   Defendant David Ebbert ("Ebbert") is the Warden of USP Lewisburg-Camp.  As Warden Ebbert, is responsible for the conduct of staff, day to day

3

operations and supervision of the Lewisburg Camp, compliance with policy, federal, state and local laws by the institution as well as discipinary action against staff.  Ebbert is responsible for the supervision of the staff at Lewisburg and their conduct and reports to Ormond.  At all relevant times Ebbert was a federal employee acting within the scope of his employment. Ebbert owes a duty of care to the Plaintiff.  Ebbert is liable to the United States for the acts and omissions alleged herein.

12.  Defendant Douglas K. White ("White") is the Warden of LSCI Allenwood, a FBOP institution.  As Warden, White is responsible for the conduct of the staff, day to day operation and supervision of LSCI Allenwood.  White is also responsible for ensuring compliance with FBOP policy, as well as federal, state and local laws.  At all relevant times, White was a federal employee acting within the scope of his employment.  White owes a duty of care to the Plaintiff.  White is liable to the United States for the acts and omissions alleged herein.

13.  Defendant David M. Barben is a Lieutentant at LSCI Allenwood, a FBOP institution.  As Lieutenant, Barben is responsible for the conduct of the staff housed in the Special Housing Unit and reports to White and Ebbert. As Lieutenant, Barben is responsible for ensuring that prisoners held and ensuring that their placement is warranted as well as receiving the necessary Segregation Reviews under 28 C.F.R. 541.26. At all relevant times, Barben was a federal employee acting within the scope of his employment.  Barden owes a duty of care to the Plaintiff.  Barben is liable to the United States for the acts and omissions alleged herein.


JURISDICTION AND VENUE

14.  The Court has jurisdiction over this action under 28 U.S.C. § 1331, § 1346, because this action arise under the United States Constitution, the Administrative Procedures Act ("APA"), the Federal Tort Claims Act "FTCA", the First, Fourth, Fifth and Fourteenth Amendments.

15.  Venue appropriately lies in this Court pursuant to 28 U.S.C. § 1391(h) and 28 U.S.C. § 1391(e) because the Middle District of Pennsylvania is a

jurisdictional district in which at least three of the defendant resides and
because a substantial part if the act or omissions giving rise to claims
occured in the Middle District of Pennsylvania.

16. The United States of America, including it's departmental, agencies
or components, is not immune to suit for actions arising under the United
States Constitution, APA and FTCA.

17. This is not an action for review of an administrative order or to
affirm, amend, moridy or set aside any part of an order.  Instead, this action
constitutes a broad challenge to the unconstitutional, unlawful and ultra
vires practices and procedures employed by the defendants.

STATEMENT OF FACTS

18. Pursuant to 18 U.S.C. § 4042 the Defendants shall (2) provide for
the ... care of all persons charged or convicted of offenses against the United
States...(3) provide for the protection, instruction and discipline of all
persons...

19. Pursuant to 28 C.F.R. § 541.20 et seq., limits the basis for the
placement of prisoners in the "Special Housing Unit" or "SHU."  Section §
541.25 requires Notice be provided within 24 hours and Section § 541.26
requires that the placement decision be reviewed by the Segregation Review
Official within 3 days, 7 day, and every 30 calendar days to determine if
continued placement is warranted.  Additionally, section § 541.32 requires
medical care to be provided and to have a mental health staff examining the
person including a personal interview.

20. FBOP has implemented these requirements in Program Statement PS 5270.11.
Under this policy staff are required to obtain approval from a Lieutenant
or Captain before placing an inmate in the SHU pending investigation.  When
an inmate is placed in the SHU an Administrative Detention Order ("ADO") or
BP-A0308 must be completed by the Lieutenant or other correctional supervisor.
The specific reason for placement in the SHU must be supported by objective
evidence and clearly articulated in the narrative section of the ADO.  A new
ADO is required each time the inmates detention status changes. Id.

5

21.  The Segregation Reviewing Official ("SRO") reviews include the inmate records while in the SHU (Special Housing Report - BP-A0292), all available memorandums from staff (inclu-ding psychology staff), all investigatory memorandums. The SRO completes a Special housing Review (BP-A0295) after review of the Special Housing Unit Record and other relevant documentation.

22.  The policy statement required the defendants to train staff on a quarterly basis in the policy, procedures and operation of the SHU.

23.  Plaintiff on March 23, 2018 while located at Lewisburg Camp was called to control and told Special Investigative Services ("SIS") wanted to see him.

24.  Thereafter, SIS called Plaintiff into a private room and told him that through a "source", Plaintiff's name came up on a few ocassions.  SIS mentioned that they heard Plaintiff was having K2 and cigarettes smuggled into the camp through his place of work.

25.  Plaintiff informed SIS that he worked in pipe fittting and that he did not have a compound drivers license and did not drive and it was impossible for him to be picking up packages.  Plaintiff explained to SIS that over the past few months he was in the Residential Drug Treatment Program ("RDAP") and that he was not working from November to February, 2018.

26.  Plaintiff expressed his innocence and notified SIS he never did any such thing.

27.  Immediately there after Plaintiff was transported to Allenwood LSCI and placed in Administrative Detention.  Plaintiff was not released until May 9, 2018.

28.  Between March 23, 2018 and May 9, 2018 Plaintiff was not seen by a Discipline Hearing Officer ("DHO"), Segregation Review Officer ("SRO"), or any member of his Unit Team including the Unit Manager, Counselor or Case Manager.  By policy, the Plaintiff's counselor was required to visit Plaintiff at least 1 time daily.  See PS 5321.04 - Unit Management Manual.

29.  Plaintiff was not reviewed within 24 hours to determine whether probable cause existed to show Plaintiff posed a serious threat.  As demonstrated by the ADO, the narrative section contains no evidence or probable cause that would warrant continued placement in the SHU.  This section was required to be completed by the placement Lieutenant.  Plaintiff's detention became illegal after the 24 hours.

30.  During Plaintiff's time in the SHU, he had to experience himself and other inmates being verbally and physically mistreated.

31.  One of the other inmates, Mr. Dove, was restrained in shackles from 8:30 am to 5 pm during the month of May.  Often, Plaintiff had to listen to him scream, shout, cry and threaten to kill him.  He also kicked his door for hours on end, and complained about his inability to use the bathroom because of his restraints.  Because of this, Plaintiff was unable to sleep even for 30 minutes.

32.  One of the correctional officers in the SHU, "Bulldog," told me that Plaintiff was in his house and that I belong to him.  Bulldog, on a regular basis, would make sexually suggestive comments such as "Deez nuts"if Plaintiff or other inmates asked a question.  It made Plaintiff feel uncomfortable even now.

33.  Another time, Plaintiff was being moved from one cell to the recreation area and was hit hard on his left ankle with a handheld metal detector because he had not lifted up his foot fast enoough for the correctional officer's liking.

34.  As a result of these happenings, sleep was almost impossible.  If Plaintiff was lucky enough to get a modicum of sleep.  Plaintiff had terrifying nightmares, which continue even now.  Plaintiff was unable to eat, as anything he would eat would not stay down.  Plaintiff had and still have panic attacks and horrific anxiety as a resultt of his experience in the SHU.

35.  Plaintiff have sent numerous Inmate Requests to psychology to try to and receive some sort of assistance and therapy to help with his panic attacks and anxiety.  As of the date of this complaint, Plaintiff had no

assistance from psychology, or even an acknowledgement of his issues that have come about as a result of the horrifying treatment of myself and other inmates while he was in the SHU.

36. Plaintiff detention was not reviewed by the SRO as required by policy and Code of Federal Regulation.

37. On June 10, 2018 Plaintiff sought assistance from Psychology based on the effects of being in the SHU. See Exh. 'C'.

38. On June 11, 2018 Plaintiff requested a copy of BOP Form BP-A0308 - Administrative Detention Order and a copy of his Form 409 Transfer Form which sent him to Allenwood. See Exh. 'D'.

39. On June 19, 2018 Plaintiff requested copies of documents from his Inmate Cnetral File. See Exh. 'E'.

40. As Plaintiff reviewed copies of his file he began filing his administrative remedy. The Warden's remedy clerk in concert with the staff from Correctional Services sought to obstruct and deny Plaintiff access to exhaust his administrative remedy. For example, Plaintiff filed a BP9 on July 11, 2018 alleging he was detained illegally in Allenwood's SHU for 45 days without probable cause and adherence to the procedures such as reviews at 3 day, 7 day, 30 day of whether SHU placement was warrranted, the BP 9 was not independently investigated. It was turned over to Correctional Services Lieutenant who was Lt. Barben.

41. On July 27, 2018 Plaintff was called to the Lieutenant's Office in relation to the administrative remedies he filed (Remedy ID 950454, 946622-R1). Defendant Barben told Plaintiff he would not process the remedy. At which point Defendant Barben informed Plaintiff he was lying about the allegations in the BP9. Barben threatened that he could put Plaintiff in the SHU for lying. Barben told Plaintiff that if he pursued the Administrative Remedy he would charge him with lying to staff, remove him from RDAP and put him in the SHU an d he would end up at the medium institution (higher custody). At which point Plaintiff was coerced into signing an Administrative Remedy withdrawl form. Plaintiff reported the incident to White and Ormond, both of whom ignored the threats and attempted intimidation and obstruction to

exhausting administrative remedy.  Plaintiff resubmitted the remedy and it
was rejected.

42.  While in the SHU plaintiff could not exhaust his administrative remedy
because the Correctional Counselor never came around to provide the required
forms, thus Administrative Remedies were unavailble until Plaintff was released
from the SHU.

43.  On July 27, 2018 Plaintiff sent White an email regarding the threats
by Barben, and obstruction of the remedy process.  See Exh. 'F' White did
not respond.

44.  On September 2, 2018 Plaintiff submitted Adm. Remedy 956520-F1, the
falsification of documents by Barben to cover-up his negligence.  Barben falsified
a Special housing Report after the fact to show that I had received all the
required reviews of detention, had been seen by medical staff, prescribed exercise
and given psychiatric assessment knowing such statements were false when
he affixed his signature to the form.  The remedy was held from Sept 2, 2018
and not rejected until 10/10/18.  See Exh. 'G'.  The rejection was to obstruct
me from proceeding further.  Had Plaintiff submitted the BP10 without the
Warden's response, Ormond would have rejected it without question even if
it pleaded the misconduct.

45.  On September 26, 2018 Plaintiff filed an administrative remedy challenging
the false statement used by SIS at Lewisburg and use of that false information
to transfer Plaintiff to another institution and place him in the SHU.  White
rejected Plaintiff's administrative remedy to obstruct Plaintiff exhausting
his remedy after holding it until 10/10/18.  Remedy ID 956481-F1.

46.  On September 26, 2018 Plaintiff filed an administrative remedy on
the basis that White was not responding to the Administrative Remedy in a
timely manner.  On October 19, 2018 White claimed that due to unavailable
staff no response can be provided.  This is of couse a misrepresentation as
the institution could have requested an extension by policy.  See 956521-F1.

47.  On September 26, 2018 Plaintiff filed an administrative remedy challenging
the staff at Lewsiburg falsifying his custody points to induce time frame
expired on 3/23/18 which was decitful and a misrepresentation since the issue

did not arise until 9/19/2018.

48. Thereafter Plaintiff filed an admin remedy #950454-R1 citing, the above remedy #'s and the obstruction, misconduct, and improper rejection. The Central Office without investigation affirmed the rejection to avoid liability.

## COUNT I - NEGLIGENCE

49. Pursuant to 18 U.S.C. § 4042, the defendants owed a duty of care to the plaintiff.

50. The Defendants White, Ormond, Barben, Ebbert acted negligently and breached their duty of care when they placed Plaintiff in the SHU without probable cause and evidence as demonstrated by the ADO that the Plaintiff posed a serious threat warranting placement in the SHU.

51. The Defendants White, Ormond, Barben, Ebbert know and had reason to know there was no probable cause as this type of behavior is part of their normal pattern and practice of placing prisoners in the SHU as a form of retaliation to show off their authority. Despite knowing that there was no probable cause of evidence of wrong doing by the Plaintiff, the Defendants White, Ormond, Barben and Ebbert left the plaintiff for 45 days in the SHU.

53. The Defendants lack of probable cause is further demonstrated by the failure to conduct the mandated reviews and evaluations at the stated interval that they were all aware of. The lack of probable cause if further demonstrated by Defendant Barben attempting to create a false Special Housing Report to mislead investigators that the Plaintiff had been accorded his due process rights.

54. As a result of Defendants White, Ormond, Barben and Ebbert's negligence the Plaintiff suffered irreparable harm.

55. Plaintiff realleges paragraph 1 through 48 by reference herein as if fully stated.

56. The Defendants  negligence cause the Plaintiff pain and suffering in which he suffered actual loss and damage.

COUNT II: Negligent Supervision, Hiring and Training

57. Plaintiff re-alleges paragraph 1 through 56 by reference and adopts all allegations contained therein as if fully stated.

58. Should it be determined that Ormond, White, Barben was acting outside the scope of their employment at the time that they allegedly committed the acts, Plaintiff submits the following claim of negligent supervision, alternatively if they were acting within the scope of their employment, Plaintiff submits the following claim under respondeat superior.

59. Defendants had a duty to protect plaintiff from being unlawfully detained and were required to properly hire, train and supervise Barben, White and Ormond as well as other BOP staff members.

60. Defendants White, Ormond, Barben breached their duty when they failed to supervise Barben and other staff despite having knowledge of his propensity to engage in misconduct and other illegal acts, including wrongful detention.

61. Defendants have never trained Barben and other staff not to illegally threaten, intimidate or detain prisoners wrongfully.

62. Defendants knew about Defendant barben and other staff members prior misconduct, they had a duty to prevent the threat, initimidation and illegal detention.

63. Defendants knew or should have known that allowing Defendant Barben, Ebbert, White and others to work unsupervised would result in them threatening, intimidating and illegally detaining prisoners in violation of federal regulations and BOP policy.

64. Due to Defendants breaching their duty, the Plaintiff was threatened, intimidated, and illegally detained.

65. The United States is liable pursuant to the Federal Tort Claims Act for the illegal acts of Defendants Barben, White, Ormond, Ebbert and others for the injury and damages suffered by plaintiff.

COUNT III: NEGLIGENT MISREPRESENTATION

66.  Plaintiff re-alleges by reference and adopts all allegations contained in paragraphs 1 through 65 as if fully stated.

67.  Defendant Barben owed a duty of care to the Plaintiff by submitting the Special Housing Report that contained accurate facts  and not misrepresentations as to the hearings and reviews the Plaintiff received.

68.  Defendant Barben in the Special Housing Report misrepresented that Plaintiff had received the required reviews, medical care and psychology vists when in fact, Plaintiff had not.  Defendant Barben sought to conceal and cover-up the negligent performance of his duty and obligation based on the lack of proper supervision he was able to create this fabricated report after the fact.

69.  Defendant failed to exercise reasonable care in communicating the information.

70.  As a result of Defendant Barben misrepresentation and the reliance on the false information, plaintiff suffered.

71.  The United States is liable pursuant to the Federal Tort Claims Act for the acts and omissions of Defendant Barben.

COUNT IV: MALICIOUS PROSECUTION

72.  Plaintiff re-alleges by reference and adopts all allegations contained in paragraphs 1 through 71 as if fully stated.

72.  Defendants Ormond, White, Ebbert, and Barben acting in concert with others did at the time and in the manner set forth above prosecute the plaintiff maliciously.

73.  Defendant Ormond, White, Ebbert, and Barben acting in concert with others were responsible for the institution or continuance of the original

disciplinary/ administrative segregation against the Plaintiff.

74. The disciplinary/administrative proceeding instituted and continued against the Plaintiff were wholly without legal or probable cause, were inititued and continued with malice, and the proceeding were terminated in favor of Plaintiff.

75. As a result of the malicious prosecution, Plaintiff suffered extreme humilation and embarrassment during the malicious prosecution. As a further result, Plaintiff suffered severe mental anxiety and distress, as well as a severe nervous disorder of his entire body during the duration of the malicious prosecution, and continuing for an extended period of time afterward. As a further result of the malicious prosecution, Plaintiff is suffering and will continue for the rest of his lifetime from the mental distress, humiliation, embarrassment and defamation of his character and reputation, which will, in part, cause him future  loss of earnings and restrict his opportunities to hold respected and trust positions in his employment and community.

76. As a result of the injuries and loss set forth, Plaintiff seeks compensatory and punative damages as a result of his malicious prosecution.

### COUNT V: VIOLATION OF 4TH AND 14TH AMENDMENT

77. Plaintiff re-alleges by reference and adopts all allegations contained in paragraphs 1 through 77 as if fully stated.

78. Defendants Ebbert, White, Ormond and Barben acting in concert with others arrested and detained the Plaintiff and placed him in the SHU.

79. Defendants Ebbert, White, Ormond and Barben had no probable cause as required by the Fourth Amendment to detain Plaintiff beyond 24 hours as demonstrated by the ADO.

80. Defendants Ebbert, White, Ormond and Barben acting in concert with others acted with disregard for Plaintiffs right to be free to move around the compound knowing there was no probable cause.

81.   Defendant White, Ormond, Ebbert, Barben and others acting in concert with them knew and should have known that probable cause demonstrating a serious threat warranting placement in the SHU was non-existent and detention was not warranted.

82.   Plaintiff was never charged with any prohibited acts.  As retaliation the Defendants Ebbert had others acting in concert with him falsify Plaintiff's custody points to transfer him to another institution.

83.   The illegal detention and seizure of the Plaintiff was in violation of his rights as secured by the Fourth and Fourteenth Amendment to the U.S. Constitution.

84.   As  a result of the defendant's actions, the plaintiff suffered damanges, and other expenses defending against mental anguish, and suffering, shame and humiliation, anxiety.

85.   Defendants Ebbert, White, Ormond and Barben acted wantonly, recklessly, willfully and maliciously, with the intent of injury and opressing the Plaintiff. As a result Plaintiff is entitled to an award of punative damages.

86.   Defendant United States is liable for the acts and omissions of Defendants Ebbert, White, Ormond and Barben.

## COUNT VI: FALSE IMPRISONMENT

87.   On March 23, 2018 Defendant Ebbert, Barben, White and Ormond through SIS executed an erroneous and false complaint , falsely stating that the Plaintiff did introduce contraband in violation of FBOP prohibited act.  The Defendants have refused to provide an unredacted copy of the complaint/ investigation report.  Plaintiff realleges paragraphs 1 thru 86 as if fully stated herein.

88.   As a result of this false complaint, Plaintiff was arrested, transported to Allenwood and placed in Administrative Detention.

89.   Defendants Ebbert, White, Ormond and Barben relied, wholly or partially on the false statement and allegations of SIS in executing the arrest, placement

14

in the SHU on the false complaint.

90.   Plaintiff was, on March 23, 2018 taken into custody against his will by the Defendants and was falsely imprisoned in the SHU against his will from that date until May 9, 2018, a period of 45 days.

91.   The charges alleged in the complaint were wholly untrue, false, and the complaint was caused to be issued by Defendant Ebbert for reasons unknown too Plaintiff at this time.

92.   Defendant Ebbert, White and Barben falsely imprisoned Plaintiff against his will and repeatedly refused and neglected to take reasonable steps and necessary action to ascertain the falsity of the Plaintiff's imprisonment. The Defendants, could have, during the duration of Plaintiff's false imprisonment, ascertained that Plaintiff was being falsely imprisoned had the Defendants exercised reasonable diligence in performing their duties and not repeatedly refused to make reasonable and necessary factual investigations of the charges made against the Plaintiff.

93.   As a result of the injuries and loss set forth, Plaintiff seeks compensatory and punative damages for the false imprisonment against the defendants.

## PRAYER

Plaintiff requests judgment against defendants, jointly, severally:

a.   For compensatory damages as determined by the tier offact to adequately compensate the plaintiff for injuries described in this complaint;

b.   For punitive damages as determined by the trier of fact to punish each defendant against which they are award to deter future similiar conduct by that defendant.

c.   For cost of the suit and

d.   For any and all other relief that may be just and proper.

15

Respectfully submitted this |7 day of December, 2018.

Joseph Miller
Reg #222203-014
LSCI Allenwood
P O Box 1000
White Deer, PA 17887


I declare the foregoing to be true and correct to the best of my knowledge, belief and recollection under penalty of perjury.

Joseph Miller

EXHIBIT A

**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

*Via Certified and Return Receipt Mail*

---

*U.S. Custom House-7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA 19106*

June 18, 2018

Joseph Miller, Reg. No. 22203-014
LSCI Allenwood
P.O. Box 1000
White Deer, PA  17887

    RE:  Administrative Claim No. TRT-NER-2018-05265
        Claim Received June 11, 2018

Dear Mr. Miller:

This is in response to your administrative tort claim in which you seek $5,000,000.00 in compensation for alleged personal injury claim at USP Lewisburg.  Specifically, you allege emotional distress, PTSD, anxiety, and depression.  You contend deprivation of freedom and liberty interests and a violation of your Fourth and Fifth Amendment rights.

After further review, we have decided to deny your claim because you have not alleged a physical injury actionable under the Federal Tort Claims Act.  28 U.S.C. §§ 1346(b)(2), 2672.

If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this letter.

            Sincerely,

            Darrin Howard
            Regional Counsel

cc: David J. Ebbert, Warden, USP Lewisburg

Inmate: Joseph Miller — Supplemental Page

These claims are against Lewisburg Camp:
(1) Negligence, (2) Negligent Supervision by Lt, Captain, Warden, violation of 4th
    Amendment right to illegal seizure, detention, violation of Fifth Amendment
    right to due process, negligent counselor not showing up for 45 days in the SHU,
    nor a case manager, or Unit Manager in violation of Bureau of Prisons policy,
    retaliation.


     On March 23, 2018 I was called to control at Lewisburg CAP and was told that
SIS wanted to see me.  SIS called me into a private room and told me that through
a source , my name came up on a few ocassions.  SIS mentioned that they heard I
was having K2 and cigarettes smuggled into the camp through my place of work. I
told the SIS officer that I worked at pipe fitting and that I didn't have a
compound drivers license and I didn't drive and it was impossible for me to be
picking up packages.  I also explained to the Officer that over the past few months
I was in RDAP and that I wan't working from Nov — Feb, 2018.  I expressed my
innocence to the Officer and let him know that I never did such a thing.  I was
then sent to Allenwood, placed in Administrative Detention from March 23, 2018
thru May 9, 2018 and released to Allenwood Low.  I was never seen by DHO or
anyone about this matter, my illegal detention and never had a chance to plead
my innocence.


As a result staff illegally detained me in violation of Bureau policy 5270.11,
Code of Federal Regulations 28 CFR 541.20, they were negligent in not knowing
those policies and falsified documents to get me transferred to Allenwood in
retaliation for asserting my innocence.  In the 45 days I was in the SHU,
no case manager, counselor or unit manager came to see me in violation of PS 5321.08;
the Lt, Capitain and Warden ignored their duty and obligation by allowing their
staff to violate my federal and constittuional rights which it is they duty to
ensure that does not happen.

I am seeking $5,000,000 against Lewisburg Camp/BOP and will similarly seek
damages individually against the persons who violated my constitutional rights
under the law enforcement exception of the Federal Tort Claims Act.

EXHIBIT B

## REQUEST FOR – ADMINISTRATIVE REMEDY WITHDRAWAL

I, Miller, Joseph, Register Number 22203-014.

By my own signature, request this REQUEST FOR ADMINISTRATIVE
REMEDY (BP-229) No. 94662-F2, be withdrawn.

This matter has been informally resolved. I acknowledge that my
withdrawal of this REQUEST FOR ADMINISTRATIVE REMEDY (BP-229) is
not the result of influence or coercion on the part of any staff
member of the Bureau of Prisons.

_Miller, Joseph _____     7.27.2018
Inmate Signature                        Date

_____                 7/27/2018
Staff Signature                         Date

_____                 2.27-18
Lieutenant/Department Head Signature    Date

## RECEIVED

JUL 27 2018

TRULINCS  22203014 - MILLER, JOSEPH - Unit: ALF-U-A

--------------------------------------------------------------------------------

EXHIBIT C

FROM: 22203014
TO: LSCI Medical
SUBJECT: ***Request to Staff*** MILLER, JOSEPH, Reg# 22203014, ALF-U-B
DATE: 06/10/2018 10:36:07 PM

To: Medical
Inmate Work Assignment: New Inmate

I would like an appointment to see the psychologist in regards to not being able to sleep at night, nightmares and anxiety.
Since being in the SHU I've not been able to sleep during the night and have been having anxiety and heart palpitations.

TRULINCS  22203014 - MILLER, JOSEPH - Unit: ALF U-A

----------------------------------------------------------------------------------------------------

FROM: 22203014
TO: LSCI Psychology Services
SUBJECT: ***Request to Staff*** MILLER, JOSEPH, Reg# 22203014, ALF-U-A
DATE: 07/31/2018 10:19:03 PM

To: Psychology
Inmate Work Assignment: RDAP

Good evening,

I sent an email last month to medical regarding seeing someone for mental health, but never heard anything back.  I would like to be seen due to me having panic attacks, nightmares, and increased anxiety since being released from the SHU.  Over the past few days I have been experiencing paranoia, anxiety and loss of sleep over certain issues.

TRULINCS  22203014 - MILLER, JOSEPH - Unit: ALF-U-A

---------------------------------------------------------------------------------------------------

FROM: LSCI R&D/Mailroom
TO: 22203014
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/07/2018 09:13:12 AM

Lewisburg is working on getting property up here

>>> ~^!"MILLER, ~^!JOSEPH" <22203014@inmatemessage.com> 8/4/2018 1:09 PM >>>
To: R&D
Inmate Work Assignment: RDAP

Good morning,  I'm still curious as to if my property is still sitting at Lewisburg, Camp? Last that I heard they were short on staff and had issues sending out inmates property.  It's been over 4 months now and I still haven't gotten the remainder of my property to include the items that I was packed out in from LEC control with officer Frank P.

BP-S148.055   **INMATE REQUEST TO STAFF** CDFRM
SEP 98                                    EXHIBIT D
**U.S. DEPARTMENT OF JUSTICE**                        **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mrs. Wright | DATE: 6/8/2018 |
|---|---|
| FROM: Joseph Miller | REGISTER NO.: 22203-014 |
| WORK ASSIGNMENT: New Inmate | UNIT: Union B 47/4 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I would like the copies of the following documents.

① Copy of my administrative detention order

② Copy of my transfer form - 409

(Do not write below this line)

DISPOSITION:

Rec'd Copy of Detention Order.
Will Review Trans Order (409).

You will be placed on callout to review your 409.

| Signature Staff Member J. Wright | Date 6/11/18 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

BP-A0308     ADMINISTRATIVE DETENTION ORDER   U.S. DEPARTMENT OF JUSTICE
DEC 16       EXHIBIT ①-1      FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| | FPC Lewisburg, PA |
| | Institution |

TO: Special Housing Unit Officer      Date/Time:  03-23-2018 @ 9:45 AM

FROM:              ,(Name/Title)
   J. REIBSOME, CAMP UNIT MANAGER

SUBJECT: Placement of  MILLER, JOE  , Reg. No. 22203-014 , in Administrative Detention.

You have been placed in administrative detention status for the following reason(s):

_____(a)  Is pending classification or reclassification; or

_____(b)  Is in holdover status pending transfer to a designated institution or other destination; or

___✓___(c)  Removal from general population.   Your presence in the general population poses a threat to life, property, self, staff, other inmates, the public, or to the security or orderly running of the institution and:

  ___✓___(1)  Is pending an investigation for a violation of Bureau regulations;

  _____(2)  Is pending an SIS investigation;

  _____(3)  Is pending investigation or trial for a criminal act;

  _____(4)  Transfer to another institution or location (local hospital/NPO, etc.);

  _____(5)  Is to be admitted to Administrative Detention for protection:

      _____(I) Since the inmate has requested admission for protection;

      I hereby request placement in Administrative Detention for my own protection.

      Inmate Signature/Register No.:

      Staff Witness Printed Name/Signature:

    ___(II) Since a serious threat exists to individual's safety as perceived by staff, although person has not requested admission; referral of the necessary information will be forwarded for an appropriate hearing by the SRO.

  _____(6)  Is terminating confinement in Disciplinary Segregation and has been ordered into Administrative Detention by the Warden's designee.

Administrative detention status is an administrative status which removes you from the general population when necessary to ensure the safety, security, and orderly operation of correctional facilities, or protect the public. Administrative detention status is non-punitive, and can occur for a variety of reasons. Your placement is because*
SIS INVESTIGATION
_____
_____

Therefore, the above named inmate is to be placed in Administrative Detention until further notice. The inmate

received a copy of this Order on (date / time) _____

Staff Witness Signature/Printed Name _____Date _____

24 hour Supervisor Review Signature/Printed Name _____Date _____

* In the case of DHO action, reference to that order is sufficient. In other cases, the correctional supervisor will make an independent review and decision, which is documented here.

Record Copy - Inmate Concerned (not necessary if placement is a result of classification or holdover status);  Copy - Captain; Copy - Unit Manager; Copy - Operation Supervisor - Administrative Detention Unit; Copy - Central File

PDF         Prescribed by P5270     (Replaces BP-A0308 of AUG 2011)

Exhibit E

BP-A0148
JUNE 10

INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) T. Henry | DATE: 6-19-2018 |
|---|---|
| FROM: Joseph M. Miller | REGISTER NO.: 22203-014 |
| WORK ASSIGNMENT: N/A | UNIT: RDAP  Union A |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

I would like to view my inmate file, as well as have copies
of what's permitted.

(Do not write below this line)

DISPOSITION:

Please come on 6-25-18 at 8:30 AM to copy requested
information

| Signature Staff Member  T. Hry | Date  6-19-18 |
|---|---|

Record Copy - File; Copy - Inmate

PDF                              Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER          SECTION 6

BP-A0148
JUNE 10

**INMATE REQUEST TO STAFF** CDFRM

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Mr. Royer | DATE: 7.30.2018 |
|---|---|
| FROM: Joseph miller | REGISTER NO.: 222030-014 |
| WORK ASSIGNMENT: RDAP | UNIT: RDAP |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

I would like a copy of my BP-A295 – Special Housing Revie
BP-A0295

(Do not write below this line)

DISPOSITION:

Provided.

| Signature Staff Member | Date 8/8/18 |
|---|---|

Record Copy - File; Copy - Inmate

PDF                              Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 6**

BP-A295.052
APRIL 1994

**SPECIAL HOUSING UNIT REVIEW**

**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

| Inmate Name: | | Register Number: | Unit: | | Institution: |
|---|---|---|---|---|---|
| **MILLER, JOSEPH** | | **22203-014** | **LYCOMING** | | **ALLENWOOD LOW FCI** |

| Date Entered Special Housing: | Reason for Placement: |
|---|---|
| **03-23-2018** | **SIS INVESTIGATION** |

| I. Subject: (2 or 3 Days) | Date Reviewed |
|---|---|
| **3 Day Review** | **03-28-2018** |

Action Taken on the Above Date:

**Continue in Special Housing Unit**

Printed Name/Signature:

**BARBEN, DAVID M**

II. RECORD REVIEW.
(To be done weekly in the inmate's absence, beginning after the in-person 7 day review, and continuing every week between each in-person 30 day review.)

| DATE | ACTION TAKEN | REMARKS | SIGNATURE |
|---|---|---|---|
| 04-02-2018 | Continue in Special Housing Unit | | BARBEN, DAVID M |
| 04-09-2018 | Continue in Special Housing Unit | | BARBEN, DAVID M |
| 04-16-2018 | Continue In Special Housing Unit | | HAAS, WILLIAM C |
| 04-23-2018 | Continue in Special Housing Unit | | BARBEN, DAVID M |

| III. Subject: (7 or 30 Days) | Review By (SRO): | Reviewing Authority: |
|---|---|---|
| **30 Day Review** | **BARBEN, DAVID M** | |

| Date inmate appeared for a Special Housing Review: | Or Date inmate waived right to appear: |
|---|---|
| **04-24-2018** | |

Has been seen daily by Medical Staff:   ☑ Yes;   ☐ No

Has been seen daily by responsible officer designated by Warden:   ☑ Yes;   ☐ No

Has received prescribed weekly exercise:   ☑ Yes;   ☐ No

Proper documentation and justification in the Central File (Incident Report, DHO Report, copies of Special Housing Review Form):   ☑ Yes;   ☐ No
if no, why not?

Is there a written psychiatric or psychological assessment on the inmate who has spent 30 days in a special housing status?   ☑ Yes;   ☐ No

Is there an additional assessment for every one month interval thereafter?   ☑ Yes;   ☐ No
if no, why not?

Action taken on the above date by the Segregation Review Official or the Reviewing Authority:

☐ Released from Special Housing;   ☑ Continue in Special Housing

Did inmate in Administrative Detention receive a written copy of staff's decision and the basis for the finding at each 30 day review?   ☑ Yes;   ☐ No
if no, why not (Should be given provided institutional security not compromised)?

Remarks: (Any change in the reason for placement is to be noted in this section. If the reason for placement changes, the inmate must receive a copy of this form):

Date of Next Review:

**05-01-2018**

Printed Name and Signature of Segregation Review Official or the Reviewing Authority and Date Signed:

**BARBEN, DAVID M**

Record Copy - Central File

This form replaces BP-295(52) dated January 1988

TRULINCS  22203014 - MILLER, JOSEPH - Unit: ALF-U-A
--------------------------------------------------------------------------------
                              EXHIBIT F

FROM: 22203014
TO: LSCI Warden
SUBJECT: ***Request to Staff*** MILLER, JOSEPH, Reg# 22203014, ALF-U-A
DATE: 07/27/2018 01:27:07 PM

To: Mr. White
Inmate Work Assignment: RDAP

Dear Mr. White

Today I was told and threatened that if I continued the process with my grievances that I would be charged with lying and sent to an FCI, as well as pulled from the RDAP program and would lose my time off.  I was also told not to file any grievances directed towards this facility.  I wanted to create a documented account and have it on record in the case that retaliation was used against me due to me continuing my remedy process.  The reason for my legal actions are because I feel that my rights were neglected by BOP officials and that the proper policies weren't followed.

I would like to still pursue my original grievance but I'm fearful of what could possibly be done to me by the retaliation of staff. I'm not trying to cause any problems for the staff here and I just want to finish my time and return home to my family.

EXHIBIT

TRULINCS  22203014 - MILLER, JOSEPH - Unit: ALF-U-A

--------------------------------------------------------------------------------

FROM: LSCI Warden
TO: 22203014
SUBJECT: RE:***Inmate to Staff Message***
DATE: 10/10/2018 05:52:02 AM


In accordance with P.S.1330.18, Administrative Remedy Program: 12.
RESPONSE TIME ?542.18 If accepted, a Request or Appeal is considered
filed on the date it is logged into the Administrative Remedy Index as
received. Once filed, response shall be made by the Warden or CCM within
20 calendar days.

>>> ~^!"MILLER, ~^!JOSEPH" <22203014@inmatemessage.com> 10/9/2018 6:46 PM >>>
To: BP-9 / Administrative Remedy Filed
Inmate Work Assignment: N/A

Thank you for your response.  However, the Bp's that were turned in on September 12, 2018, has already surpassed the 20
day response date.  Another, 20 day response date, will be delay me from filing my remedy in a timely manner.
-----LSCI Warden  on 10/9/2018 3:12 PM wrote:

>
A review of your complaint revealed six Request for Administrative
Remedies (BP-9's) are pending receipt.  Once logged into the
Administrative Remedy Index, you will receive a Receipt for each one,
and if accepted you should received a response within 20 calendar days.

In accordance with P.S.1330.18, Administrative Remedy Program:  12.
RESPONSE TIME ?542.18  If accepted, a Request or Appeal is considered
filed on the date it is logged into the Administrative Remedy Index as
received. Once filed, response shall be made by the Warden or CCM within
20 calendar days.

>>> ~^!"MILLER, ~^!JOSEPH" <22203014@inmatemessage.com> 10/9/2018 1:03
PM >>>
To: BP-9 / Administrative Remedy Filed
Inmate Work Assignment: N/A

Warden,

I submitted several BP9 which is for the office of the Warden, not Unit
Team, consistent with Federal Regulations and Program Statement PS
1330.18.  I understand from my Unit Team that the BP9's were delivered
to the Remedy Clerk.  As of today, I have neither received any receipts
as required under the Administrative Remedy Program PS 1330.18 nor an
acknowledgment and or rejection notice.  Please advise as I feel the
institution is intentionally delaying and denying me access to the
Administrative Remedy process to obtain relief and exhaustion my remedy.
I should have already received the receipts as the BP9 were submitted
on 9/12/2018 & 9/16/2018, well past the 20 window to respond and or
request for an attention.

If the institution does not intend to respond, please provide me a
letter from the office of the Warden indicating that no response will be
provided so I can attach it to and proceed to the BP-10 without any
further delay.

The matters raised therein were previously brought to the institutions
attention through the BP8 process and my unit team and there is no
resolution to correct the issue has already occurred.

RECEIVED
NOV 3 0 2018

TRULINCS  22203014 - MILLER, JOSEPH - Unit: ALF-U-A

--------------------------------------------------------------------------------

Please advise at your earliest convenience.

Thank you for your prompt reply.
-----LSCI Warden  on 10/9/2018 10:07 AM wrote:

>
You need to address this matter with your unit team.

>>> ~^!"MILLER, ~^!JOSEPH" <22203014@inmatemessage.com> 10/3/2018 7:47
PM >>>
To: Warden White
Inmate Work Assignment: RDAP

Warden:

As a follow to the email noted below...I feel the need to communicate
to both the Regional Director as well as Washington, as to how I am
being treated within the confines of the administrative remedy process.
There has to be a response, other wise non-response is a due process
violation...since in fact it inhibits my further responding...which by
virtue of the non-response causes a liberty interest.  I can only give
not hearing from someone until Friday, the 5th of October.  Thank you!
-----MILLER, JOSEPH on 10/3/2018 12:37 PM wrote:

>

Good afternoon Mr. White,

This email is in regards to my Bp9's that I submitted and haven't
gotten and responses for.  On September 12, 2018 I submitted two Bp9's,
and haven't heard anything nor have I gotten any receipts.  The same
goes for four other Bp9's that I submitted, and haven't heard anything
about, to include not receiving any receipts.

Thank you for your time, and I'm looking forward to hearing back from
you.

RECEIVED
NOV 3 0 2018